OPINION
{¶ 1} Defendant-appellant Jerry Pleasant appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of aggravated robbery with a firearm specification. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On December 9, 2002, the Stark County Grand Jury indicted appellant on one count of aggravated robbery in violation of R.C.2911.01(A)(1), a felony of the first degree, with a firearm specification pursuant to R.C. 2941.145. At his arraignment on December 13, 2002, appellant entered a plea of not guilty to the charges.
 {¶ 3} Subsequently, a trial commenced on February 3, 2003. The following evidence was adduced at trial.
 {¶ 4} On October 29, 2002, Travis Hall, who has felony convictions for carrying a concealed weapon and possession of cocaine, was at Stacy Calhoun's house with Jennifer Petty, who is his girlfriend, and Davey Cantwell, among others. The house is frequented by drug traffickers. Hall, who has known appellant for a few years, testified that the people at the house were playing pool that night when Cantwell let appellant and appellant's brother, Jeremy Pettus, in the house. The following testimony was adduced when Hall was asked what happened after appellant and Pettus came through the door:
 {¶ 5} "A. I don't know about Dave. Dave was in front of him, and I looked and I seen Jeremy with the gun.
 {¶ 6} "Q. Did he have the gun pointed at someone?
 {¶ 7} "A. At me.
 {¶ 8} "Q. At you. Did you see Jerry with a gun?
 {¶ 9} "A. No. I seen Jerry but I wasn't paying no attention because the dude had a gun pointed at me.
 {¶ 10} "Q. You weren't paying attention to Jerry?
 {¶ 11} "A. Huh-uh.
 {¶ 12} "Q. Well, what did they say when he came in with the gun?
 {¶ 13} "A. Well, when they came in Jeremy had the gun pointed at me. I kind of thought he was like playing, so I grabbed the gun, you know what I'm saying? And then as I was grabbing the gun, you know what I'm saying, he kept saying that this ain't no game, you know what I'm saying?
 {¶ 14} "So I'm looking at him and I'm saying, I'm not really paying no attention to anybody else, and you know what I'm saying? My life's about to end right there and that was it. It just escalated from there." Transcript at 19-20.[1]
 {¶ 15} According to Hall, appellant and Pettus then proceeded to have everyone in the house lay on the ground and take their clothes off. The clothes were then searched by the two for money and jewelry. Appellant and Pettus took some gold necklaces, bracelets, rings and currency. Hall further testified that Pettus, during the robbery, was walking around hitting people with pool sticks. Hall testified that he was struck in the head underneath his braids, but did not go to the hospital since there was a warrant for his arrest.
 {¶ 16} When asked at trial whether appellant had a weapon that night, Hall testified that he could not remember because he "wasn't focused on him" and that he did not know because appellant "was doing a lot of things that night." Transcript at 22, 30. However, during his Grand Jury testimony, Hall had testified that both appellant and Pettus had guns on them that night and "were going to use them." Transcript at 38. Since his December 5, 2002, Grand Jury testimony conflicted with his testimony at trial with respect to whether appellant had a firearm during the robbery, the trial court declared Hall a court's witness and both parties were permitted to cross-examine him.
 {¶ 17} During cross-examination, Hall testified that he did not know what appellant was doing that evening because appellant was not in his sight and that appellant did not point a gun at him or display a gun in any way. Hall, when asked whether what happened was "being perpetrated or committed to you by Jeremy [Pettus]", responded in the affirmative. Transcript at 45.
 {¶ 18} Stacy Calhoun, who has a felony conviction for cocaine trafficking and who was incarcerated as of the time of the trial on such charge, testified that, on October 29, 2002, she had left her house to pick up some friends and was gone approximately twenty minutes. When she walked into her house, Calhoun saw people on the floor undressed and, as she turned a corner, saw a gun in her face. Calhoun, who did not see who had the gun, was then told to get down on the floor. When asked why she did not call the police that night, Calhoun testified that she was nervous since she was on probation and that "everyone was telling me to leave it alone, not to call the police, . . ." Transcript at 55.
 {¶ 19} Canton Police Officer James Riddle also testified at trial. Officer Riddle testified that, on November 1, 2002, he was transporting Travis Hall to the Stark County Jail. According to Officer Riddle, when Hall was asked at the jail whether he had any injuries, he said that "his head was split between the braids." Transcript at 61. Hall then told Officer Riddle, who took the initial report, that he had been robbed by appellant and someone whose nickname was "Stone" and that both individuals had weapons. Transcript at 62. Hall told the Officer that $500.00 in U.S. currency, two gold rings, two gold necklaces with charms, and two gold bracelets had been taken from him.
 {¶ 20} Detective John Dittmore of the Canton Police Department was assigned to investigate the subject robbery. During his investigation, the Detective spoke with appellant. The following testimony was adduced when Detective Dittmore was asked what appellant told him about what had occurred on October 29, 2002.
 {¶ 21} "A. He stated that he went into the residence. He also stated that he was armed at the time. He stated that if I recall correctly, at one point that his brother was responsible for striking Travis Hall with the pool stick.
 {¶ 22} "Q. Did this interview take place on or about November 6th, 2002?
 {¶ 23} "A. Yes.
 {¶ 24} "Q. Was Mr. Pleasant Mirandized before the interview?
 {¶ 25} "A. Yes, he was." Transcript at 83.
In a tape recording of the interview that was played for the jury, appellant admitted that he had entered the residence with his brother, armed with a firearm.
 {¶ 26} After the State rested its case, appellant moved for a judgment of acquittal. The trial court, however, denied such motion. Appellant then called Anthony Koukoutas, a licensed attorney, who testified that he represented appellant at one point in the case sub judice. During his representation of appellant, Attorney Koukoutas had an opportunity to speak with Travis Hall. Attorney Koukoutas testified that Hall called him collect from the Stark County Jail seeking legal representation. When Attorney Koukoutas informed Hall that he would be unable to represent him since he was representing appellant and Hall was the alleged victim, Hall "indicated . . . that didn't matter, that Jerry [appellant] didn't do anything, that it was the other guy that did it being Jeremy Pettus." Transcript at 132.
 {¶ 27} At the conclusion of the evidence and the end of deliberations, the jury, on February 4, 2003, found appellant guilty of one count of aggravated robbery with a firearm specification. As memorialized in an entry filed on February 5, 2003, appellant was sentenced to an aggregate prison sentence of ten years.
 {¶ 28} It is from his conviction and sentence that appellant now appeals, raising the following assignments of error:
 {¶ 29} "I. The Trial Court Erred And Thereby Deprived The Appellant, Mr. Jerry Pleasant, Of Due Process Of Law As Guaranteed By TheFourteenth Amendment Of The United States Constitution And Comparable Provisions Of The Ohio Constitution By Overruling Mr. Pleasant's Crim. R. 29 Motion For Judgment Of Acquittal, As The Prosecution Failed To Offer Sufficient Evidence To Prove Beyond A Reasonable Doubt Each And Every Element Of Aggravated Robbery And A Firearms Specification.
 {¶ 30} "II. The Trial Court Erred And Thereby Deprived The Appellant, Mr. Jerry Pleasant, Of Due Process Of Law As Guaranteed By TheFourteenth Amendment Of The United States Constitution And Comparable Provisions Of The Ohio Constitution By Finding Mr. Pleasant Guilty, As The Verdict For The Charges Of Aggravated Robbery And A Firearms Specification Were Against The Manifest Weight Of The Evidence."
 I, II {¶ 31} Appellant, in his first assignment of error, argues that the trial court erred in overruling appellant's Crim. R. 29 motion for judgment of acquittal since "the prosecution failed to offer sufficient evidence to prove beyond a reasonable doubt each and every element of aggravated robbery with a firearms specification." In his second assignment of error, appellant contends that the verdict was against the manifest weight of the evidence.
 {¶ 32} Crim. R. 29(A) requires a trial court, upon motion of the defendant, to enter a judgment of acquittal of one or more offenses charged in an indictment if the evidence is insufficient to sustain a conviction of the offense or offenses. However, a trial court may not grant an acquittal by authority of Crim. R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. On appeal of the denial of a Crim. R. 29(A) motion, the "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Williams, 74 Ohio St.3d 569, 576, 1996-Ohio-91, 660 N.E.2d 724, citing State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 33} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. . . . The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 34} As is stated above, appellant was indicted on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree. R.C. 2911.01 states, in relevant part, as follows: "(A) No person, in attempting or committing a theft offense, as defined in section2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 35} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." Pursuant to R.C. 2941.145, the gun specification attached to such charge required the jury to find that a firearm was brandished or used to commit the offense.
 {¶ 36} We find, based upon the facts as set forth in detail above, that any rational trier of fact could have found that appellant committed the offense of aggravated robbery with a firearm specification. Appellant, in his own statement to Detective Dittmore, admitted having a visible firearm on his person on the night in question. At trial, Travis Hall admitted, that during his Grand Jury testimony, he testified that he saw both appellant and appellant's brother, Jeremy Pettus, enter the residence with guns. Testimony also was adduced that appellant and his brother robbed the victims of money and gold jewelry. Based on the foregoing, we find that the trial court did not err in overruling appellant's Crim. R. 29 motion for judgment of acquittal since a rational jury could have found that appellant, in attempting, or committing, a theft offense, had a deadly weapon on or about his person and displayed it, brandished it, indicated that he possessed it or used it.
 {¶ 37} We further find that the verdict is not against the manifest weight of the evidence since the jury did not lose its way in convicting appellant of aggravated robbery with a firearm specification. While appellant argues that Hall's testimony was unreliable since Hall offered contradictory testimony as to whether or not appellant had a gun on the night of October 29, 2002, the jury, as trier of fact, was in the best position to assess Hall's credibility. Moreover, appellant, in the taped statement that was played for the jury, admitted that he had a firearm on his person that evening.
 {¶ 38} Appellant's two assignments of error are, therefore, overruled.
 {¶ 39} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
By: Edwards, J., Gwin, P.J. and Boggins, J. concur
[1] All references to the transcript relate to Volume No. 2.